UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERICA AYALA,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>VOLKSWAGEN OF UNION LLC and JONATHAN KORKOWSKI,<br><br>　　　Defendants. | Civ. No. 22-04294 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

　　This matter comes before the Court on Plaintiff Erica Ayala's motion (DE 11) for entry of default judgment against Defendants Volkswagen of Union LLC ("VOU") and Jonathan Korkowski (collectively, "Defendants"). For the reasons stated herein, the motion is **DENIED WITHOUT PREJUDICE.**

### I.　Background[1]

#### a.　Factual Allegations

　　Plaintiff Erica Ayala worked as a sales representative for VOU, a car dealership. (Compl. ¶¶ 10, 15.) Defendant Korkowski was the general manager of VOU, making him Ayala's supervisor. (*Id.* ¶¶ 12–13.) Ayala was hired in or around June 2021, and alleges that she "was an overall good employee who routinely received compliments for her work performance." (*Id.* ¶¶ 15–16.) But "in or around November 2021, Plaintiff began to suffer discrimination based solely on her sex (female), forcing Plaintiff to ultimately resign from her position." (*Id.* ¶ 17.)

---

[1]　Certain citations to the record are abbreviated as follows:
　　　"DE" = Docket entry number in this case
　　　"Compl." = Complaint (DE 1)

1

Plaintiff alleges that Korkowsi's wife "did not like that there was a female employee working with her husband." (*Id.* ¶ 18.) On November 20, 2021, Ayala states that "a customer named Brian Kinsley entered the Dealership and informed Plaintiff that he had been referred by Defendant Korkowski's wife." (*Id.* ¶ 19.) Korkowski then "sent Plaintiff a text message instructing her to tell the customer that she was new, that this was her first week there, and that José had hired her."[2] (*Id.* ¶ 20.) Ayala states that "it was in fact her fourth month of employment," and that "she knew that Defendant Korkowski was the one who had hired her." (*Id.* ¶ 21.) When Ayala questioned Korkowski, he responded "my wife had reached out to me furious because her referral has informed her that a female sales rep was helping him." (*Id.* ¶ 22.)

Plaintiff continues that on or about December 20, 2021, a coworker, Eric, "posted a photo to his social media account of himself and Plaintiff at Defendants' Christmas party" and "Korkowski reprimanded Eric for posting the photo and demanded that he immediately remove it from his account because his wife might see it and will know that Plaintiff was an employee of Defendants." (*Id.* ¶ 23.)

On or about December 23, 2021, Ayala alleges that "Korkowski saw his wife approaching the dealership" and "immediately instructed Marcus (Sales Manager) to bring Plaintiff to the back of the Dealership out of his wife's sight." (*Id.* ¶ 24.) Plaintiff states that although she "continually asked to return to the sales floor so that she could perform her job, Marcus refused to permit her to leave the back room because '[Defendant Korkowski] asked me to pull you back to talk to you.'" (*Id.* ¶ 25.) Further, Ayala claims that these "are just some of the acts of discrimination and harassment that Plaintiff experienced on a regular basis while employed by Defendants." (*Id.* ¶ 36.)

Plaintiff alleges that she "felt that she had no choice but to resign from her employment." (*Id.* ¶ 26.) She sent Marcus a text message "advising that she

---

[2] It is unclear from the Complaint whether Ayala actually did follow Korkowski's instructions to misrepresent the circumstances of her hiring.

was resigning from her job due to this ongoing discrimination." (*Id.* ¶ 27.) Ayala alleges that "[r]ather than deny it, Marcus instead replied, 'I asked you to step away for a second to avoid potential drama for a second. He's fixing his situation for the sake of a kid. . . This was a 10 minute thing and that's it because she left that quickly.'" (*Id.* ¶ 28.) Ayala resigned, and alleges that she was "constructively discharged from her employment effective on or about December 23, 2021." (*Id.* ¶ 33.)

Plaintiff alleges that VOU violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (Count I), that both Defendants violated the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12(a) (Count II), and that Korkowski is liable for aiding and abetting under the NJLAD, N.J.S.A. § 10:5-12(e) (Count III).

### b. Procedural History

Plaintiff filed the Complaint on June 27, 2022. (DE 1.) Proof of service was filed as to VOU indicating that it was served on July 12, 2022. (DE 5.) Proof of service was filed as to Korkowski indicating that he was served on September 14, 2022. (DE 6.) Neither Defendant has answered or otherwise defended. On February 28, 2023, I directed Ayala to request entry of default and file a motion for default judgment. (DE 9.) Ayala requested default as to both Defendants (DE 10), which the Clerk of the Court entered on March 7, 2023. Ayala filed the present motion for default judgment on March 21, 2023. (DE 11.)

## II. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure permits a court to enter a default judgment against a properly served defendant who fails to respond. *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v.*

*Pepe*, 431 F.3d 162, 165 n.6 (3d Cir.2005)). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

Prior to entering a default judgment, the Court must "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). The Court must also consider the following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citation omitted); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,* 175 F. App'x 519, 522 (3d Cir. 2006) (citation omitted).

### III. Discussion
#### a. Subject Matter Jurisdiction

When a default judgment is sought against a party that has not filed responsive pleadings, the Court "'has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 05-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

The Court has subject matter jurisdiction. Ayala's first cause of action arises under Title VII, a federal statute, and thus is sufficient to create federal question jurisdiction under 28 U.S.C. § 1331. The Court has supplemental

jurisdiction over Plaintiff's remaining state law causes of action under 28 U.S.C. § 1367 because the federal and state law claims all rely on the same alleged conduct, and thus are part of the same case or controversy.

### b. Personal Jurisdiction

The Court has personal jurisdiction over both Defendants. For entities, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted). VOU is an LLC allegedly organized in New Jersey with a principal place of business in Union, New Jersey. (Compl. ¶ 9.) Because New Jersey is the paradigmatic forum to exercise jurisdiction over VOU, I find that the Court has jurisdiction over it. As to Korkowski, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Plaintiff does not allege Korkowski's domicile. However, a defendant is subject to specific jurisdiction if he "purposefully established 'minimum contacts' in the forum state" and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–74 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316(1945)). Korkowski allegedly worked in New Jersey as Plaintiff's superior and the actions complained of occurred in New Jersey. Thus, the Court has specific personal jurisdiction over Korkowski.

### c. Sufficiency of Service

Plaintiff filed proof of service as to VOU, which indicates that on July 12, 2022, a copy of the summons and complaint were left with Melissa Salas, a "front desk clerk" who was authorized to accept service for VOU. (DE 5.) This is sufficient under Federal Rule of Civil Procedure 4(h)(1)(B), which permits service "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."

Plaintiff filed proof of service as to Korkowski indicating that he was personally served on September 14, 2022. (DE 6.) This is sufficient under Federal Rule of Civil Procedure 4(e)(2)(A), which permits service by "delivering a copy of the summons and of the complaint to the individual personally."

### d. Sufficiency of Plaintiff's Causes of Action

Next, I must determine whether the Complaint sufficiently states a cause of action. In doing so, I accept all well-pleaded factual allegations in the Complaint as true, except as to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535–36.

Ayala alleges claims for sex discrimination and hostile work environment under Title VII and the NJLAD. To establish a *prima facie* case of sex discrimination under Title VII and the NJLAD, a plaintiff must establish that: "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (citations omitted). Ayala is a woman and she alleges that she "was an overall good employee who routinely received compliments for her work performance" (Compl. ¶¶ 16–17)—*i.e*, that she is a member of a protected class and was qualified for her position as a sales representative.

As to the third element, Ayala alleges that she resigned from her position (*Id.* ¶ 30), but nevertheless may "rely on the doctrine of constructive discharge to establish that she had suffered an adverse employment action." *Vanartsdalen v. Twp. of Evesham*, No. 05-1508, 2007 WL 2219447, at *4 (D.N.J. Aug. 2, 2007). "In order to establish a constructive discharge, a plaintiff must show that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996) (citation and internal quotation marks omitted); *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004) ("The inquiry is objective: Did working

6

conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"). Proving constructive discharge requires a plaintiff to "'demonstrate a greater severity or pervasiveness of harassment than the minimum required to provide a hostile working environment.'" *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006) (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992), *aff'd*, 511 U.S. 244).

  Ayala alleges that she (1) was once instructed to lie to a customer about when she was hired and who hired her, (2) was once hurried off of the sales floor to avoid her interaction with Korkowski's wife, and (3) that a different employee was once instructed to remove a photo of the company Christmas party from his social media account because it included Ayala. (Compl. ¶¶ 19–25.) While actions other than termination of employment can certainly be "adverse employment actions," these are not pled as such, and would not qualify in any event. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); *Ford v. Cnty. of Hudson*, 729 F. App'x 188, 195 (3d Cir. 2018) (citing *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152–53 (3d Cir. 1999)). Ayala was not demoted, her position, pay and benefits were not changed, and she did not suffer any equivalent adverse action.

  As noted above, Ayala resigned, and therefore falls back on a constructive discharge theory. To be sure, these three situations as alleged here were uncomfortable and unwarranted. But these allegations, assuming they bespeak discrimination, do not rise to the level of "severe" or "pervasive" conduct which was "intolerable" and would cause a reasonable person to feel compelled to resign. In short, they do not amount to a constructive discharge. Plaintiff has not pled an "adverse employment action" in the form of

7

constructive discharge for purposes of her sex discrimination claim under Title VII and NJLAD.

Ayala's hostile work environment claim also requires discrimination which is "severe" or "pervasive." *Luxich v. Gonzales*, No. 04-6176, 2007 WL 1963020, at *8–9 (D.N.J. June 29, 2007). It fails for the reasons stated above.

Ayala also alleges that the three instances described above "are just some of the acts of discrimination and harassment that Plaintiff experienced on a regular basis while employed by Defendants." (Compl. ¶ 36.) This vague allegation does not suffice to save these causes of action.

Because I have found that Ayala has not sufficiently pled a cause of action, I do not analyze damages or the remaining default judgment factors at this time.

## IV. Conclusion

Plaintiff has not sufficiently pled a cause of action. Accordingly, the motion for default judgment is **DENIED**. This order is entered without prejudice to the submission of a proposed amended complaint within 30 days, without the necessity of a formal motion to amend. If no proposed amended complaint is filed, this case will be closed.

An appropriate Order follows.

Dated: October 19, 2023

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty**
**United States District Judge**